UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| B3DC NAVY YARD LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>EPOCH DESIGN GROUP, INC., *et al.*,<br><br>    Defendants.<br><br>EPOCH DESIGN GROUP, INC.,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>CATALYST ENGINEERING, LLC, *et al.*,<br><br>    Third-Party Defendants. | Civil Action No. 19-2939 (JEB) |

**MEMORANDUM OPINION**

Plaintiff B3DC owns several Barre3 fitness studios in Washington, D.C. B3DC engaged Epoch Design, Inc. as its architect for a new Navy Yard project. Epoch, for its part, hired Catalyst Engineering, LLC as the mechanical engineer to help design the HVAC system for the studio. After a long and troubled construction process, which involved multi-month delays, B3DC finally opened the studio in late 2018. In 2019, an HVAC water pipe ruptured and flooded the studio. After an investigation, the cause of the rupture was determined to be the improper design and installation of the HVAC system.

B3DC sued Epoch and Alltherm, LLC, the installer of the system. Epoch then filed a Third-Party Complaint, asserting that Catalyst must indemnify it for the faulty HVAC design.

Catalyst now moves to dismiss, contending that it is not subject to personal jurisdiction here. Epoch rejoins that under the D.C. long-arm statute, which provides for personal jurisdiction over foreign residents who supply services within the District, Catalyst can be haled into this Court. Finding that the supplying of the HVAC design took place entirely outside of the District, the Court will grant the Motion.

I.  **Background**

As it must at this stage, the Court assumes that the facts pled in the Third-Party Complaint are true. Epoch served as the architect for B3DC Navy Yard, a limited-liability company organized in the District of Columbia. See ECF No. 9 (Third-Party Compl.), ¶¶ 4, 9. B3DC directed Epoch to engage Catalyst Engineering as the mechanical engineer on a project to build a new Barre3 fitness studio in the Navy Yard neighborhood in the District. Id., ¶¶ 8, 10. Epoch, a Missouri corporation, subsequently entered into a contract with Catalyst, an Ohio corporation, to design the project's HVAC system in 2017. Id., ¶¶ 1, 2, 10; ECF No. 39-2 (Proposal) at 2.

Catalyst's role in the D.C. project was limited. Its final bill to Epoch came to $3,250, which accounted for less than 1% of B3DC's total cost of the project. See ECF No. 1 (Compl.), ¶ 85; ECF No. 31 (Catalyst MTD) at 9. Catalyst's proposal, to which Epoch agreed, specifically prohibited any in-person meetings in D.C. or any site visits. See Proposal at 2; see also ECF No. 39 (Epoch Opp.) at 4 (Catalyst was retained via the Proposal). From Ohio, Catalyst sent Epoch in Missouri the mechanical-engineering drawings and design of the HVAC system. See Epoch Opp. at 4; Catalyst MTD at 9 (sent only one set of drawings to construction site in the District).

Nine months after construction was completed, the HVAC system's pipes ruptured, flooding the studio with six inches of water, causing Barre3 to cancel its classes for repairs. Id., ¶¶ 64–66. The studio did not reopen for another three months. Id., ¶ 66.

Subsequently, B3DC filed a Complaint against Epoch for breach of contract and negligence. Id., ¶¶ 86–115. It claims that beyond problems with the HVAC system, Epoch fell behind on its obligations and that the Barre3 studio encountered construction delays, which led to its opening almost four months after the target completion date. Id., ¶¶ 22–23, 41–43. Maintaining that any damages incurred during the course of the Barre3 project were proximately caused by Catalyst, Epoch filed a Third-Party Complaint against it seeking indemnification in the event that Epoch is liable to B3DC. See Third Party Compl., ¶¶ 13–16. Catalyst now moves to dismiss this Third-Party Complaint for lack of personal jurisdiction. See Catalyst MTD at 1.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a suit if the court lacks personal jurisdiction over it. The plaintiff bears the burden of establishing personal jurisdiction, FC Inv. Grp. LC v. IFX Mkts., Ltd., 529 F.3d 1087, 1091 (D.C. Cir. 2008), but courts resolve factual discrepancies in its favor. See Livnat v. Palestinian Auth., 851 F.3d 45, 57 (D.C. Cir. 2017). When personal jurisdiction is challenged, "the district judge has considerable procedural leeway in choosing a methodology for deciding the motion." 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2004). The court may rest on the allegations in the pleadings, collect affidavits and other evidence, or even hold a hearing. Id.

**III.     Analysis**

This Court may exercise personal jurisdiction over Catalyst only if permitted by both D.C.'s long-arm statute and the Constitution's Due Process Clause.  See United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995).  Personal jurisdiction may either be in the form of general or specific jurisdiction.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).  In seeking dismissal, Catalyst argues that neither form of jurisdiction is applicable here.

   A.  General Jurisdiction

The Due Process Clause permits general jurisdiction when a non-resident defendant maintains sufficiently systematic and continuous contacts with the forum state, regardless of whether those contacts gave rise to the claim in the particular suit.  Helicopteros Nacionales de Colombia, S.A., v. Hall, 466 U.S. 408, 414–15 (1984).  Where a plaintiff can show one of "a limited set of affiliations with a forum," all of which are tantamount to a defendant's domicile, Daimler AG v. Bauman, 571 U.S. 117, 137 (2014), general jurisdiction is appropriate.  For corporations, general jurisdiction may be asserted if the forum is one in which the corporation is "fairly regarded as at home," id. (quoting Goodyear, 564 U.S. at 924), which has been defined as generally being either its "place of incorporation" or its "principal place of business."  Id.

Catalyst, however, is incorporated and maintains its principal place of business in Ohio.  See Third-Party Compl., ¶ 2; see also ECF No 31-2 (Declaration of Benjamin Biada), ¶ 3.  As such, Catalyst is not "fairly regarded as at home" in the District, and general jurisdiction thus does not lie here.  See Daimler, 571 U.S. at 137–39.  Epoch does not contend otherwise.

   B.  Specific Jurisdiction

To show specific jurisdiction, a plaintiff must meet the requirements of the Due Process Clause and that jurisdiction's long-arm statute.  Specific jurisdiction permits a court to adjudicate

4

"issues deriving from, or connected with, the very controversy that establishes the jurisdiction." Goodyear, 564 U.S. at 919 (citation omitted).  D.C.'s long-arm statute enumerates the kinds of contacts with the District that are sufficient to bring a non-resident defendant into a D.C. court, only one of which Epoch relies on here: "a claim for relief arising from the person's . . . contracting to supply services in the District of Columbia."  D.C. Code § 13-423(a)(2); Epoch Opp. at 4–5.

"The case law interpreting the 'contracting to supply services' provision of the District of Columbia long-arm statute is sparse."  COMSAT Corp v. Finshipyards S.A.M., 900 F. Supp. 515, 524 (D.D.C. 1995); see also Gillespie v. Capitol Reprographics, LLC, 573 F. Supp. 2d 80, 84 n.8 (D.D.C. 2008) (noting sparse caselaw).  Courts that have addressed this provision have held that it only applies when "a non-resident defendant contracts to supply a service . . . within the District and a claim then arises from that contract."  Dumitrescu v. DynCorp Int'l, LLC, 257 F. Supp. 3d 13, 19 (D.D.C. 2017); Pease v. Burke, 535 F. Supp. 2d 150, 153 (D.D.C. 2008) (noting contract in question must be a contract to supply services in, not outside, District).  For example, agreements for employment within the District may be sufficient to subject the foreign employer to jurisdiction for supplying services in this city.  Gillespie, 573 F. Supp. 2d at 84 n.8.

Here, Epoch was the only entity that had a contract with Catalyst.  See Epoch Opp. at 5 (noting Catalyst was retained by Epoch at request of B3DC).  In other words, B3DC entered into no agreement with Catalyst, despite Catalyst's being "specifically included in B3DC's Barre3 Fitness Design and Construction guide as the mechanical engineer to be used on the Project."  Id. at 4.  After Epoch received the design from Catalyst, Alltherm, another party to this lawsuit, was tasked with actually installing and repairing the HVAC system at the D.C. studio.  See Compl., ¶¶ 103–04.

5

For this Court to exercise jurisdiction, the contract giving rise to this dispute must have obligated Catalyst to supply a service in this city. That is not what happened here, however. The Epoch-Catalyst contract provided that the designs for the HVAC system would be sent to Epoch, not B3DC, and it specifically disavowed any contact with the job site here. See Epoch Opp. at 4–5; Catalyst MTD at 4; Proposal at 2. This meant that Catalyst produced the designs in Ohio and supplied them to Epoch in Missouri. That was the extent of Catalyst's contacts with Epoch. The contract, therefore, did not obligate Catalyst to supply any services within the District as required by the long-arm statute; accordingly, no jurisdiction can arise from it. See Dumitrescu, 257 F. Supp. 3d at 19.

As no provision of D.C.'s long-arm statute applies, this Court need not address whether Catalyst has sufficient minimum contacts to satisfy the requirements of the Due Process Clause. See D'Onofrio v. SFX Sports Group, Inc., 534 F. Supp. 2d 86, 94 (D.D.C. 2008).

## IV. Conclusion

For these reasons, the Court will grant Defendant's Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: February 24, 2020